**Sally BECKER, Personal Representative of the Estate of Fred E. Lowe, Deceased, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 91–3100.**

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1992.*

Decided July 1, 1992.

---

* The panel reminds the reader that, as in all cases, the date of submission is a purely random occurrence; no subliminal messages are intended.

**692**

Robert W. Metzler, Washington, D.C., argued (Shirley D. Peterson, Gary R. Allen, Ann B. Durney, on brief), for appellant.

** The HONORABLE GARNETT THOMAS EI-SELE, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

2. Thus, prior to May 16, 1980, Fred Lowe owned 13.33% of LCC, Katherine Lowe owned 7.56% of

David Domina, Omaha, Neb., argued (David Domina, Omaha, Neb. and Larry A. Holle, Lincoln, Neb., on brief), for appellee.

Before McMILLIAN, BOWMAN, Circuit Judges, and EISELE,** Senior District Judge.

BOWMAN, Circuit Judge.

The United States appeals from the judgment of the District Court[1] in favor of Sally Becker. We affirm, but remand for arithmetical correction of the amount of the judgment.

Prior to May 16, 1980, Fred Lowe owned approximately 24,300 acres of ranch land in Nebraska, which he leased for $36,000 per year to Lowe Cattle Company, Inc. ("LCC"), a family-owned ranching operation. At that time, Fred Lowe owned ninety of the 675 capital stock shares of LCC. His wife Katherine owned fifty-one shares, his daughter Sally Becker owned 489 shares, and his son-in-law (Sally Becker's husband) Ed Becker owned forty-five shares.[2] On May 16, 1980, pursuant to the Agreement to Recapitalize Corporation ("Recapitalization Agreement"), *reprinted in* Appellant's Appendix at 177, Fred Lowe transferred his 24,300 acres of ranch land and his ninety shares of the capital stock of LCC to LCC in exchange for 17,797 shares of preferred stock of LCC and $400,000 of LCC debentures bearing interest at the rate of 9% per year. Katherine Lowe exchanged her fifty-one shares of the capital stock of LCC to LCC for 556 shares of preferred stock, while Sally and Ed Becker respectively transferred their 489 and forty-five shares of the capital stock of LCC for 489 and forty-five shares of the common stock of LCC.[3]

LCC, Sally Becker owned 72.44%, and Ed Becker owned 6.67% of LCC.

3. Thus, after the Recapitalization Agreement, Fred Lowe owned 94.23% of LCC, while Katherine Lowe owned 2.94% of LCC, Sally Becker owned 2.59%, and Ed Becker owned 0.24% of LCC. As both the preferred stock and the common stock are voting shares, the Recapitalization Agreement gave Fred Lowe absolute control of LCC.

Fred Lowe died in 1983. In 1987, the Internal Revenue Service ("IRS") notified Sally Becker, as the personal representative of Fred Lowe's estate, that the estate owed the IRS for unreported gift taxes arising out of the Recapitalization Agreement. The IRS determined that the value of the ranch land and capital stock that Fred Lowe exchanged pursuant to the Recapitalization Agreement exceeded the value of the preferred stock and corporate debentures that he received, and that this difference represented a taxable gift.[4] Sally Becker, as personal representative for Fred Lowe's estate, paid the assessments of back taxes, penalties, and interest, and filed a refund claim. She filed this suit when her refund claim was denied by the IRS.

The parties stipulated that the fair market value of the ranch land that Fred Lowe transferred to LCC was $3,156,790, and that the 17,797 preferred stock shares transferred to Fred Lowe had a redemption value of $108 per share. The government contended that the fair market value of the 17,797 preferred stock shares and of the corporate debentures received by Fred Lowe was less than the fair market value of the ranch land and the ninety shares of capital stock that Fred Lowe transferred to LCC, and that the transaction was not in the ordinary course of business. Sally Becker, on the other hand, claimed that the preferred stock and corporate debentures received by Fred Lowe were at least equal in value to the land and capital stock relinquished by Fred Lowe, and alternatively, even if Fred Lowe transferred more to LCC than he received, the transaction was done in the ordinary course of business and therefore was not a gift. Sally Becker also contended that because Fred Lowe was the majority shareholder of LCC after the transaction, he had not relinquished full control over the ranch land and therefore no gift occurred.

The jury returned a verdict in favor of Sally Becker. It found there was no difference in the value between the property Fred Lowe transferred to LCC and the property he received from LCC pursuant to the Recapitalization Agreement. The jury also found that the transaction was made in the ordinary course of business, and that Fred Lowe did reserve power over the land which he had transferred to LCC. On appeal, the government challenges all three findings.[5]

■ As an initial matter, the government contends that Sally Becker is bound by her initial assertion that the preferred stock and debentures received by Fred Lowe were worth only $2,081,600. We disagree. While it is true that she claimed this as the value of the preferred stock and debentures in her claim for refund and in her complaint, this claim was predicated on her position that the land and capital stock transferred by Fred Lowe to LCC was worth not more than $2,081,600. She later agreed to the stipulation that the ranch land transferred by Fred Lowe was worth $3,156,790. She never agreed to a stipulation that the preferred stock and debentures were worth only $2,081,600, nor did she assert that this was the value of the preferred stock and debentures after agreeing to the land value stipulation. Her position from the outset has been that the preferred stock and debentures received by Fred Lowe were worth at least as much as the land and capital stock relinquished by

---

4. Transfers reached by the gift tax are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts, but embrace as well sales, exchanges, and other dispositions of property for a consideration to the extent that the value of the property transferred by the donor exceeds the value in money or money's worth of the consideration given therefor. However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative in-

tent), will be considered as made for an adequate and full consideration in money or money's worth.
Treas.Reg. § 25.2512-8 (1980).

5. The government also contends that the issue of whether Fred Lowe relinquished control over the ranch land that he transferred to LCC is a question of law, not fact, and therefore should not have been submitted to the jury. Because of our holding, we need not and do not reach this issue.

him. Accordingly, when her position as to the fair market value of the land changed, it follows that her position as to the value of the preferred stock and debentures likewise changed. This is borne out by examining what the parties agreed were the controverted issues of fact in this case. Following the final pretrial conference, the following was listed as one of the unresolved issues of fact: "What was the total fair market value on the date of the transaction of the property that [Fred Lowe] received from [LCC]?" *Becker v. United States*, Civil No. 88-0-816, Order on Final Pretrial Conference at 8 (D.Neb. Apr. 16, 1991),[6] *reprinted in* Appellant's Appendix at 36, 43. Thus, it is clear that the value of the property received by Fred Lowe was a disputed factual issue to be decided by the jury.[7]

■ Our standard for review of a jury finding is a deferential one: we must affirm the jury's verdict "if, viewing the evidence in the light most favorable to appellees, reasonable persons could differ as to the proper conclusion." *Rademaker v. Nebraska*, 906 F.2d 1309, 1311 (8th Cir.1990). Our review of the record convinces us that the jury's finding that the value of the preferred stock and debentures received by

Fred Lowe was not less than the value of the ranch land and capital stock he transferred to LCC is reasonable and therefore must be affirmed.

The government notes that the redemption value of the preferred stock is $108 per share; thus, the "liquidation value" of Fred Lowe's 17,797 preferred stock shares was $1,922,076. Combining this amount with the $400,000 value of the debentures,[8] the government arrives at an amount ($2,322,076) which is less than the combined value of the ranch land and the capital stock that were transferred by Fred Lowe to LCC ($3,254,890).[9] The government points to this evidence to support its claim that the jury erroneously found that the preferred stock and debentures received by Fred Lowe were not worth less than the land and capital stock he transferred to LCC.

A reasonable jury, however, could disregard the liquidation valuation method when determining the fair market value of the preferred stock obtained by Fred Lowe. The price at which Fred Lowe could redeem his shares of preferred stock to LCC was not necessarily the fair market value of those shares.[10] The jury had before it,

---

**6.** The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

**7.** "[T]he setting out of issues and specifications [in an Order on Pretrial Conference] replaces the pleadings and governs the proceedings from this point forward." Neb.Dist.Ct.R. 25(B)(2)(D). The government's attempt to bind Becker to her pleading by filing a pre-trial memorandum (conceding that the preferred stock and debentures received by Fred Lowe were worth $2,081,600) *after* the Order on Pretrial Conference had been issued is clever but unavailing.

**8.** The government contends that the fair market value of the debentures issued to Fred Lowe was less than their face value of $400,000. A review of the record indicates that there was conflicting testimony on the value of the debentures. Viewing the evidence in the light most favorable to the appellees, we use the face value of $400,000 as the value of the debentures.

**9.** The government uses the book value of the capital stock at the time of the transfer ($1,090 per share) to arrive at the amount of $98,100 that it uses as the total value of the LCC capital stock that Fred Lowe transferred to LCC.

**10.** [I]f a gift is made in property, its value at the date of the gift shall be considered the amount of the gift. The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts. The value of a particular item of property is not the price that a forced sale of the property would produce. Nor is the fair market value of an item of property the sale price in a market other than that in which such item is most commonly sold to the public, taking into account the location of the item wherever appropriate.... All relevant facts and elements of value as of the time of the gift shall be considered.

Treas.Reg. § 25.2512-1 (1980); *see also Campbell v. Commissioner*, 943 F.2d 815, 823 (8th Cir.1991). When valuing stocks whose selling prices are unavailable, such as those at issue here:

the fair market value is to be determined by taking the following factors into consideration:

.    .    .    .    .

(2) In the case of shares of stock, the company's net worth, prospective earning power and

*inter alia,* the fair market value of LCC assets immediately after the transfer,[11] the fact that Fred Lowe's block of preferred stock constituted an overwhelming majority of the voting shares, the fact that his shares had the potential to realize dividends, and the fact that the remaining LCC stock was owned by members of Fred Lowe's family, who, according to the record, regularly deferred to his decisions concerning the operation of LCC. Having reviewed the evidence, we are satisfied it provides a sufficient basis for the jury's finding that the value of the preferred stock and debentures acquired by Fred Lowe pursuant to the Recapitalization Agreement was at least equal to the value of the ranch land and capital stock that he transferred to LCC. We therefore decline to hold that the jury's finding was not reasonable. *Cf. Campbell v. Commissioner,* 943 F.2d 815, 823 (8th Cir.1991) ("the ultimate question of [fair market] value is one of fact"); *Heyen v. United States,* 945 F.2d 359, 364 (10th Cir.1991) ("Because valuation of stock is a question of fact ... this court has limited review of the fact findings.") (citing *Hamm v. Commissioner,* 325 F.2d 934, 938 (8th Cir.1963), *cert. denied,* 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964)). Accordingly, as Fred Lowe did not transfer property that was worth more than the property he received, the transfer necessarily was not a gift, so we need not and do not reach the other issues raised by the government.

The judgment of the District Court is affirmed in all respects except as to the amount. According to the government's unopposed motion, the amount of the judgment award was miscalculated. We therefore grant the District Court leave to correct the award and remand the case so that the amount of the judgment award may be properly calculated.

---

dividend-paying capacity, and other relevant factors.
Some of the "other relevant factors" referred to in subparagraph[ ] ... (2) of this paragraph are: The goodwill of the business; the economic outlook in the particular industry; the company's position in the industry and its management; the degree of control of the business represented by the block of stock to be valued; and the values of securities of corporations engaged in the same or similar lines of business which are listed on a stock exchange. However, the weight to be accorded such comparisons or any other evidentiary factors considered in the determination of a value depends upon the facts of each case. Treas.Reg. § 25.2512–2(f) (1980). Jury instructions in this case covered both of these regulations, as well as the regulation set forth in n. 4, *supra.*

11. Substituting the stipulated fair market value of the land transferred to LCC ($3,156,790) for the amount listed on the pro forma fair market value balance sheet used by the parties ($2,081,-600), Defendant's Exhibit 219, *reprinted in* Appellant's Appendix at 180, results in a net fair market value for LCC after the Recapitalization Agreement of $3,492,565 (assets of $3,905,853 less liabilities of $413,288). Fred Lowe's 94.23% share of this is $3,291,044. This amount, combined with the $400,000 in debentures he received (a total of $3,691,044), is greater than the value of the land and capital stock that he transferred to LCC ($3,254,890).