William G. CAMPBELL; Norma T. Campbell, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 90–2730.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1991.

Decided Aug. 27, 1991.

R. Donald Turlingon, New York City, argued (R. Donald Turlington, James A. Gouwar, Bennett I. Deutsch, Stuart B. Katz and Richard A. Ruffer, Jr., on the brief), for appellants.

Bruce R. Ellisen, Washington, D.C., argued (Gary R. Allen, Richard Farber and Bruce R. Ellisen, on the brief), for appellee.

Before BEAM, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and URBOM,* Senior District Judge.

BEAM, Circuit Judge.

William and Norma Campbell appeal from the tax court's decision affirming, in part, the Commissioner's assessment of deficiencies in their federal income tax for the years 1979 and 1980. The Campbells challenge the tax court's finding that partnership profits interests received by Mr. Campbell constitute income. We affirm in part and reverse in part.

## I. BACKGROUND

Prior to and during the years in issue, William Campbell was employed by Summa T. Group, a collection of business entities involved in the formation and syndication of limited partnerships. Campbell served as vice president and director for most members of the Summa T. Group, including Summa T. Realty, Inc., a real estate brokerage and consulting firm. He also served as vice president of Realty Properties Company, another member of Summa T. Group. Most of Campbell's services during these years were performed for Summa T. Realty. *Campbell v. Commissioner*, 59 T.C.M. (CCH) 236, 237 (1990).

In partnership with Jim Nettles, another Summa T. Realty employee, Campbell packaged and sold interests in transactions on behalf of Summa T. Realty. *Id.* Nettles left Summa T. Realty in 1979, and Campbell became responsible "for locating suitable properties for Summa T. Realty, negotiating the acquisition of those properties, obtaining the financing necessary to ac-

quire the properties, organizing the partnerships which would eventually acquire those properties, and assisting in the preparation of offering materials in connection with the syndication of those partnerships." *Id.* Following Nettles's departure, Campbell negotiated a new compensation agreement under which he received fifteen percent of the proceeds from each syndication and, for his services, special limited partnership interests (profits interests) in the partnerships that he helped form and finance. *Id.* Campbell sought these interests because of the immediate tax benefits he would receive and the residual value they might have. Based on consultation with two tax attorneys, he believed that the receipt of these interests in exchange for services would not be taxable events, at the time of acquisition. *Id.* at 237–38.

Relevant to this appeal, Campbell performed services in the formation and syndication of three limited partnerships. In 1979, he received a two percent special limited partnership interest in Phillips House Associates, Ltd. *Id.* at 238. Realty Properties was the sole general partner in Phillips House, and David Kane, president of Realty Properties, was also a special limited partner. *Id.* at 237–38. Phillips House was formed to purchase, renovate and operate a hotel in downtown Kansas City, Missouri. The offering memorandum, which was provided to potential investors in the thirty-five Class A limited partner units available for sale, predicted losses for tax purposes from 1979 to 1985, ninety-four percent allocated to the limited partners and two percent allocated to each special limited partner and the general partner. *Id.* at 238–39. However, the memorandum warned that an Internal Revenue Service audit was likely. And, it was predicted that the IRS probably would disallow some or all of the deductions and allocations. *Id.* at 239.

Twenty Class A interests were sold by December 31, 1979, and the remaining fifteen were sold by December 31, 1980. *Id.*

---

* The HONORABLE WARREN K. URBOM, Senior United States District Judge for the District of Nebraska, sitting by designation.

at 240. Each unit sold for $99,250. *Id.* at 238. Resale of partnership units was subject to approval by the general partner, which could withhold approval arbitrarily. *Id.* at 240. The partnership did not anticipate cash distributions to the Class A limited partners until 1982 and to the special limited partners and the general partner until 1984. *Id.* Once cash became available for distribution, the Class A limited partners were given priority. *Id.* at 239. They were also entitled to return of their capital investment upon the sale or refinancing of the hotel. The first $30,000 of any additional proceeds from such a transaction were allocated to the general partner as return of capital. The special limited partners were each entitled to a share of any remaining proceeds. *Id.* at 240.

Diversified Financial Services, a member of Summa T. Group, received three percent of the Phillips House offering proceeds as reimbursement for expenses incurred in the offering. *Id.* at 238. Realty Properties, and other members of the group, received 42.5 percent of the proceeds for "expense allowances, consulting fees, and management fees." *Id.* at 238–39. Campbell provided services in the formation and syndication of the partnership. However, the record does not reveal what part of these fees were paid to Summa T. Group for services actually performed by Campbell, nor does it reveal what part of Campbell's partnership interest, if any, was received as compensation for services for which his employer was compensated.

The other two limited partnerships at issue here were formed under similar agreements. Campbell received a one percent interest in The Grand partnership, which was formed in 1980 to purchase and operate the Howard Johnson's Motor Lodge in Myrtle Beach, South Carolina. *Id.* at 238, 241. Also in 1980, the Airport partnership was formed to purchase and operate the Northwest Airport Inn in St. Louis County, Missouri. *Id.* at 244. Campbell received a one percent interest in Air-

port. *Id.* at 238. As in Phillips House, Realty Properties was the general partner, Campbell and Kane were special limited partners, and thirty-five Class A limited partnerships were sold in both The Grand and Airport. *Id.* at 241–42, 244. Realty Properties and its affiliates, including Diversified Financial Services and Summa T. Realty, received 30.2 percent of the proceeds of The Grand's offering of limited partnership interests, *id.* at 242, and 38.5 percent of the proceeds of Airport's offering. *Id.* at 244. These payments were made for expense allowances, consulting fees, management fees and financing fees. Again, Campbell provided some of these services, and the record does not reveal the capacity in which he performed them. *Id.* at 242, 244. The offering memoranda for The Grand and Airport projected taxable losses for the first several years of operations. As with Phillips House, however, the memoranda warned that any of the deductions and credits might be disallowed by the Internal Revenue Service. *Id.* at 242, 245.

On May 10, 1983, the Commissioner issued a notice of deficiency for the tax years 1979 and 1980, alleging that Campbell should have included the value of his interests in these partnerships in ordinary income.[1] *Id.* at 247. The Commissioner valued Campbell's interests in Phillips House, The Grand and Airport at $42,084, $16,968 and $20,683, respectively. *Id.* In an amendment to his answer, the Commissioner alleged that Campbell was liable for additions to tax for, *inter alia*, negligently failing to include these interests in his ordinary income.

The tax court upheld, in part, the Commissioner's assessment of deficiency and addition to tax. The court agreed that the fair market value of the profits interests should have been included in Campbell's income. The court, however, did not fully agree with the Commissioner's valuation of the interests. Upon revaluation, the court sustained the Commissioner's deficiency in regard to The Grand. The court valued

---

**1.** The notice contained other adjustments to Campbell's income. However, the only remaining dispute is in regard to the inclusion of the partnership interests in ordinary income. *See id.* at 247.

Campbell's interest in Airport at $15,000 and his interest in Phillips House at $25,000 and entered an order accordingly. *Id.* at 256.

## II. DISCUSSION

Campbell argues on appeal, as he did unsuccessfully in the tax court, that a service partner (i.e., a partner who receives his partnership interest in exchange for services provided to the partnership) who receives a profits interest (i.e., a right to share in profits and losses only, as opposed to an interest in the capital assets of a partnership) in a partnership does not realize income upon receipt of that interest, and, therefore, no taxable event occurs. In the alternative, he argues that the interests he received had no value at the time he received them and, thus, he should not have been taxed.

At this point, the Commissioner concedes that the tax court erred in holding that the receipt of a profits interest in exchange for services to the partnership should be considered ordinary income to the service provider. *See* Brief for Appellee at 13–14. However, for the first time, the Commissioner now asserts that Campbell actually received the partnership interests in exchange for services he provided to his employer, rather than services he provided to the partnerships. According to the Commissioner, the tax court held that Campbell received the interests as compensation from his employer. Thus, he is not a service partner; the principles of partnership taxation do not apply; and Campbell's receipt of compensation from his employer was taxable upon receipt.

### A. *Employee or Partner*

■ We make short work of the Commissioner's alternate argument. We may affirm a trial court's decision on any ground supported by the record, whether or not that ground was addressed by the lower court. *See Brown v. St. Louis Po-*

*lice Dep't,* 691 F.2d 393, 396–97 (8th Cir. 1982) (when issue was raised but not addressed by the district court and did not require factual findings, appellate court may affirm based on that issue), *cert. denied,* 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983). Such action, however, would be inappropriate here. The Commissioner's argument, at best, requires that we resolve a disputed question of fact. Contrary to the Commissioner's belief, the tax court did not hold that Campbell received his partnership interests for services he performed for his employer rather than services performed for the partnerships. In reaffirming *Diamond v. Commissioner,* 492 F.2d 286 (7th Cir.1974), the court held "that section 721(a) and the regulations thereunder are simply inapplicable where, as in the *Diamond* case and *the instant case, a partner receives his partnership interest in exchange for services he has rendered to the partnership."* Campbell, 59 T.C.M. at 249. (emphasis added). The court also noted the records of the partnerships indicate that Campbell received the partnership interests after rendering services. *Id.* at 249. The Commissioner tenuously relies on the tax court's statements that Campbell received his partnership interests in connection with services provided for his employer. *Id.* at 251–53. These statements were made in the discussion of *when* Campbell received his interests. We believe that the court did not specifically hold that the interests were received as payment for services provided to his employer. In any event, we decline to address this factual matter and we disregard the argument.[2]

### B. *Taxing Profits Interests*

Although the Commissioner concedes the tax court's error in taxing a service partner's profits interest, the tax court's holding is not without support. In fact, the only circuit court to address the issue arrived at the same conclusion. *See Diamond,* 492 F.2d 286. However, Campbell

---

**2.** The details of Campbell's compensation agreement with his employer are not in the record. Campbell apparently agreed to forego compensation from his employer in exchange for the opportunity to receive interests in the partnerships that he helped form. The record does not suggest that he received the interests from his employer.

and several amici curiae[3] strongly argue that the tax court's decision does substantial damage to established principles of partnership tax law. In addition, several commentators have recently analyzed the issue and have come to a variety of conclusions. *Compare, e.g.*, Hortenstine & Ford, *Receipt of a Partnership Interest For Services: A Controversy That Will Not Die*, 65 Taxes 880, 881 (1987) (Generally, the fair market value of a profits interest received by a service partner should be included in income.) *and* C. Bishop & J. Brooks, Federal Partnership Taxation 83–86 (1990) (Perhaps, when partnership income is very speculative, some profits interests should not be included in income.) *with* 1 W. McKee, W. Nelson, & R. Whitmire, Federal Taxation of Partnerships & Partners ¶ ¶ 5.02[1][b], at 5–14, 5.02[1][c], at S5–2 to –3 (2d ed. 1990 & Supp. 2 1991) (The receipt of a profits interest is not a taxable event.) *and* A. Willis, T. Pennell, & P. Postlewaite, Partnership Taxation § 46.12, at 46–36 (4th ed. 1991) (Although the ultimate result is uncertain, "[t]he preferred tax treatment of the transfer of a profits interest as compensation for services is not to tax it at all."). Thus, we are reluctant to accept the Commissioner's concession without substantive review.

The tax court rejected Campbell's contention that the regulations promulgated under section 721 of the Internal Revenue Code and the general principles of partnership taxation exempt from taxation profits interests received in exchange for services.[4] *Campbell*, 59 T.C.M. at 248–49. The

court reaffirmed its holding that section 721 and its regulations are "inapplicable where, as in the *Diamond* case and the instant case, a partner receives his partnership interest in exchange for services he has rendered to the partnership." *Id.* at 249. Section 721 relates to contributions of property to partnerships, but not to contributions of services, which are not property within the meaning of that section. *Id.* Section 721 was enacted to allow the contribution of property to a partnership without recognition of gain or loss. The rationale for nonrecognition is that no disposition of property has occurred. Rather, the partnership interest represents a change in form of the asset. In the present case, the court held that the receipt of profits interests represented compensation for services, not change in form of assets. *Id.*

The court also noted the inconsistency in imposing immediate taxation upon a service partner who receives a capital interest and not upon a service partner who receives a profits interest, as section 721 makes no distinction between the two. *Id.* Further, the section 721 regulations do not expand the scope of the statute to provide nonrecognition of income to partners who contribute services in exchange for a partnership interest. *Id.* Thus, the tax court found no authority to support different treatment for capital and profits interests received in exchange for services and held that Campbell received ordinary income upon receipt of the profits interests.

After finding that Campbell's receipt of the profits interests were taxable events,

---

3. Two amici curiae briefs were filed in this appeal. Deloitte and Touche, an international accounting firm, filed one. The other was filed jointly by National Venture Capital Association, The American Film Marketing Association, The Coalition of Publicly Traded Partnerships, The International Council of Shopping Centers, The Investment Program Association, the National Association of Industrial and Office Parks, and the Securities Industry Association.

4. Section 721 provides: "No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership." I.R.C. § 721(a) (1988).

The regulations under section 721 provide:

To the extent that any of the partners gives up any part of his right to be repaid his contributions (as distinguished from a share in partnership profits) in favor of another partner as compensation for services (or in satisfaction of an obligation), section 721 does not apply. The value of an interest in such partnership capital so transferred to a partner as compensation for services constitutes income to the partner under section 61. The amount of such income is the fair market value of the interest in capital so transferred, either at the time the transfer is made for past services, or at the time the services have been rendered where the transfer is conditioned on the completion of the transferee's future services. Treas.Reg. § 1.721–1(b)(1) (1956).

the court applied section 83 to determine when the income should have been recognized. *Id.* at 249–50. Section 83 provides rules governing when property received in connection with the performance of services must be recognized as income. I.R.C. § 83(a) (1988).[5] The regulations define property to "include[ ] real and personal property other than either money or an unfunded and unsecured promise to pay money or property in the future." Treas. Reg. § 1.83–3(e) (1985). The tax court had no doubt that a profits interest is property rather than a promise to pay money or property in the future. *Campbell*, 59 T.C.M. at 249–51. Further, the court found no substantial risk of forfeiture. Thus, the interests were taxable upon receipt. *See id.* at 252.

The tax court's holding was based principally on *Diamond*, and that case is analogous. However, to fully understand the concerns raised, we must review several prior cases and the underlying statutory provisions. When a service partner receives an interest in partnership capital, the cases clearly hold that a taxable event has occurred. The receipt of the capital interest must be included in the service partner's income. *See, e.g. United States v. Frazell*, 335 F.2d 487, 489 (5th Cir.1964), *cert. denied*, 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965). *See also* W. McKee, *supra*, ¶ 5.01, at 5–2 (transfer of capital interest is taxable). As an interest in intangible personal property, the receipt of a capital interest appears to be taxable under the authority of section 83 of the Internal Revenue Code.[6] There is little, if any, dispute that such a transaction involves the recognition of income.

As noted, however, when the service partner receives solely a profits interest, the tax consequences are unclear. In contrast to *Diamond*, the tax court has held, and the Commissioner has conceded in some cases, that receipt of a profits interest by a service partner creates no tax liability. *See National Oil Co. v. Commissioner*, 52 T.C.M. (CCH) 1223, 1228 (1986) (Commissioner conceded that if taxpayer received only profits interest, no taxable event had occurred); *Kenroy, Inc. v. Commissioner*, 47 T.C.M. (CCH) 1749, 1756–59 (1984) (profits interest had no fair market value, thus no tax liability upon receipt); *Hale v. Commissioner*, 24 T.C.M. (CCH) 1497, 1502 n. 3 (1965) ("Under the regulations, the mere receipt of a partnership interest in future profits does not create any tax liability. Sec. 1.721–(1)(b), Income Tax Regs.").

The code does not expressly exempt from taxation a service partner's receipt of a profits interest, and the courts that have held that it is not taxed upon receipt do not appear to have closely analyzed the issue. However, commentators have developed three interrelated theories in support of the proposition that it is not a taxable event: 1) based upon regulation 1–721.1(b), a profits interest is not property for purposes of sections 61 and 83; 2) a profits interest may have no fair market value; and 3) the nonrealization concepts governing transactions between partner and partnership preclude taxation. *See, e.g.,* W. McKee, *supra*, ¶ ¶ 5.01–.02[1], at 5–3 to –5; 5.02[2], at 5–15 to –18; 5.02[1][c], at S5–2 to –9.

The tax court and the Seventh Circuit rejected at least the first two of these

---

**5.** The text of section 83(a) provides, in part:
(a) General Rule—If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed, the excess of—
 (1) the fair market value of such property ... at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over
 (2) the amount (if any) paid for such property, shall be included in the gross income of the person who performed such services in

the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable.

**6.** A proposed amendment to the treasury regulations provides:

"(i) If the partnership interest is transferred after June 30, 1969 ... then the transfer of such interest in partnership capital shall be treated as a transfer of property to which section 83 and the regulations thereunder applies." Proposed Treas.Reg. § 1.721–1(b)(1)(i) (1971).

theories in *Diamond.*[7] The tax court found that Diamond's receipt of a partnership profits interest in exchange for services was taxable as ordinary income, did not come within the scope of section 721 and had a readily ascertainable fair market value. The Seventh Circuit affirmed. *Diamond,* 492 F.2d at 286–87, 291. The facts in *Diamond* are very similar to those before us, except in regard to the issue of value. Diamond had arranged the financing of a land purchase in exchange for a profits interest in the partnership that was to hold title to the land. *Id.* at 286–87. Diamond arranged the financing and received his partnership profits interest and then, three weeks later, sold his interest to a third party for $40,000. *Id.* at 287. Diamond treated the sale proceeds as short-term capital gain, which he offset by short-term capital loss. *Id.*

The Seventh Circuit rejected Diamond's argument that regulation 1–721.1(b)(1), because it distinguishes between receipt of a capital interest and a profits interest and specifically states only that a service partner who receives a capital interest must recognize income, implies that a service partner who receives a profits interest does not recognize income. *Id.* at 288–89. The court noted that section 721 applies only to those partners who contribute property to the partnership and that the application of the regulation could also be so limited. *Id.* at 288. After considering other published views on the matter, the court declined to interpret the regulation as Diamond proposed. *Id.* at 289–91. Although it affirmed the tax court, the Seventh Circuit noted the presence of strong views to the contrary, *id.* at 289, and recognized the limitations of its holding:

> There must be wide variation in the degree to which a profit-share created in favor of a partner who has or will render service has determinable market value at the moment of creation. Surely in many if not the typical situations it will have only speculative value, if any.

*Id.* at 290.

The commentators generally agree that the nonrecognition principles of section 721 do not apply to a service partner because a service partner does not contribute property in exchange for his partnership interest. *See, e.g.,* W. McKee, *supra,* ¶ 5.01, at 5–2. We also agree. However, the section 721 regulations are relied upon to tax a service partner's receipt of a capital interest. And, as with a profits interest, a service partner who receives a capital interest has not contributed property in exchange for his partnership interest. Thus, the section 721 regulations provide some guidance when reviewing whether general principles of partnership taxation provide for nonrealization in this case.

Section 721 codified the rule that a partner who contributes property to a partner-

---

**7.** Because section 83 had not been enacted at the time of the *Diamond* transfer, the court's holding was limited to finding that a service partner's receipt of a profits interest was governed by section 61. Although the language of the statute is clear, some question exists as to the applicability of section 83 to a service partner's receipt of a profits interest. Regulation 1.83–1(a) provides the general rule for the inclusion of property transferred in connection with the performance of services in gross income: "Section 83 provides rules for the taxation of property transferred to an *employee or independent contractor* ... in connection with the performance of services by such employee or independent contractor." Treas.Reg. § 1.83–1(a) (1978) (emphasis added). And, the regulations further provide: "Property transferred to an *employee or an independent contractor* ... in recognition of the performance of, or the refraining from performance of, services is considered transferred in connection with the performance

of services within the meaning of section 83." *Id.* § 1.83–3(f) (emphasis added). A proposed regulation under section 721 states: "If the partnership interest is transferred after June 30, 1969 ... then the transfer of such interest in *partnership capital* shall be treated as a transfer of property to which section 83 and the regulations thereunder applies." Proposed Treas.Reg. 1.721–1(b)(1)(i) (1971) (emphasis added). Arguably, the section 1.721–1(b)(1) distinction between capital and profits interests and the regulations under section 83 create the implication that a profits interest is not property subject to section 83. *See* W. McKee, *supra,* ¶ ¶ 5.01–.02, at 5–3 to –5, 5.02[1][c][iii], at S5–7 to –8; A. Willis, *supra,* § 46.08, at 46–22 to –24. *But see* Hortenstine, *supra,* at 903–08 (profits interest not excluded from section 83). Regulation · 1.83–3(e), however, includes all personal property within the definition of property for purposes of section 83.

ship recognizes no income. *Id.* ¶ 5.02[1][c][ii], at S5–5. And, regulation 1.721–1(b)(1) simply clarified that the nonrecognition principles no longer apply when the right to return of that capital asset is given up by transferring it to another partner. At that time, the property has been disposed of and gain or loss, if realized, must be recognized. As a corollary, section 1.721–1(b)(1) outlines the tax treatment of the partner who receives that capital interest. A substantial distinction, however, exists between a service partner who receives a capital interest and one who receives a profits interest. When one receives a capital interest in exchange for services performed, a shift in capital occurs between the service provider and the individual partners. *See id.* ¶ 5.02[1][c][i], at S5–4; Hortenstine, *supra,* at 885–87. The same is not true when a service partner receives a profits interest. In the latter situation, prior contributions of capital are not transferred from existing partners' capital accounts to the service provider's capital account. Receipt of a profits interest does not create the same concerns because no transfer of capital assets is involved. That is, the receipt of a profits interest never affects the nonrecognition principles of section 721. Thus, some justification exists for treating service partners who receive profits interests differently than those who receive capital interests.

Probably more relevant to our analysis, however, is section 707 of the Internal Revenue Code, which supports Campbell's argument. *See* I.R.C. § 707 (1988). Generally, a partner receives a distributive share of income instead of compensation from his partnership. *See Pratt v. Commissioner,* 550 F.2d 1023, 1026 (5th Cir.1977) (salary payments to a partner treated as a distributive share of income); *Commissioner v. Moran,* 236 F.2d 595, 598 (8th Cir.1956) ("an individual cannot be his own employee nor can a partner be an employee of his own partnership"); *Lloyd v. Commissioner,* 15 B.T.A. 82, 87 (1929) (same). Except under certain circumstances, "the general statutory policy for treating partnerships for tax purposes contemplated that the income of a partnership would flow through to the individual partners." *Pratt,* 550 F.2d at 1026. Only when the transaction is treated as one between the partnership and a partner acting in a nonpartner capacity is the payment received by the partner not considered a distributive share. *See id.* at 1026–27; I.R.C. § 707(a)(2)(A). Section 707 created an exception to the general rule.

Section 707 provides that when a partner engages in a transaction with a partnership in a nonpartner capacity that transaction will be treated as between the partnership and one who is not a partner. I.R.C. § 707(a)(1). When a partner receives payment for services performed for the partnership, that transaction falls under section 707(a)(1) if "the performance of such services ... and the allocation and distribution, when viewed together, are properly characterized as a transaction occurring between the partnership and a partner acting other than in his capacity as a member of the partnership." *Id.* § 707(a)(2)(A)(iii). This exception was enacted to prevent partnerships from using direct allocations of income to individuals, disguised as service partners, to avoid the requirement that certain expenses be capitalized. *See* W. McKee, *supra,* ¶ 5.02[1][b], at 5–13. However, it was not intended to apply when a service provider acts within his capacity as a partner. *See* § 707(a)(2)(A)(iii). Arguably, section 707(a) would be unnecessary if compensatory transfers of profits interests were taxable upon receipt because, if so, every such transfer would be taxed without this section. W. McKee, *supra,* ¶ 5.02[1][b], at 5–13 to –14.

In *Diamond,* where the service provider became a partner solely to avoid receiving ordinary income, we have no doubt that the receipt of the profits interest was for services provided other than in a partner capacity. That is, Diamond was likely to (and in fact did) receive money equal to the value of his services and apparently did not intend to function as or remain a partner. Thus, the receipt of his partnership profits interest was properly taxable as easily calculable compensation for services performed. Campbell's case, however, is not so clear. Campbell's interests were not

transferable and were not likely to provide immediate returns. Thus, we doubt that the tax court correctly held that Campbell's profits interests were taxable upon receipt.

 More troubling, however, is Campbell's argument that the profits interests he received had only speculative, if any, value. We fully agree with this contention and we reverse the tax court. As noted by the tax court, "fair market value is 'the price at which property would change hands in a transaction between a willing buyer and a willing seller, neither being under compulsion to buy nor to sell and both being informed' of all the relevant circumstances." *See Palmer v. Commissioner*, 523 F.2d 1308, 1310 (8th Cir.1975) (quoting *Hamm v. Commissioner*, 325 F.2d 934, 937 (8th Cir.1963), *cert. denied*, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964)). And, while we review de novo the basis of a fair market value determination, the ultimate question of value is one of fact. *See Estate of Palmer v. Commissioner*, 839 F.2d 420, 423 (8th Cir.1988).

Campbell's expert testified that the values of the partnership interests were speculative and not in excess of $1,000. His opinion was based on the present values of the cash distributions projected in the offering memoranda. He discounted these values because of the restrictions on transferability and the lack of participation rights in management of the partnerships. He attached no present value to the projected tax benefits because of the substantial risk of disallowance upon likely audits. The Commissioner used the same basic method of valuation, except that he included the present value of the tax benefits in his calculations and used a much lower discount rate resulting in higher present values.

The tax court accepted the method of valuation proposed by the parties, with some modifications. The court rejected Campbell's expert's opinion that the tax benefits were so speculative that they had no value and rejected the Commissioner's determination of the appropriate discount rate. Then, based on the present value of the tax benefits and future cash payments, reduced by the speculative nature of the Phillips House interest, the court valued

the interests as indicated above. *Campbell*, 59 T.C.M. at 254–56. Recognizing that the tax court's determination of value is a factual finding subject to clearly erroneous review, and that the tax court does not have to accept an expert's opinion as to value, *see Palmer*, 523 F.2d at 1310, we are, nonetheless, left with the firm belief that the court's valuation was erroneous.

The tax court relied too heavily on the fact that Class A limited partners were willing to pay substantial sums for their interests at the same time Campbell received his interest. Because of the difference in the nature of the investments, we believe that this fact is not relevant. The Class A limited partners had superior rights to cash distributions and return of capital, as well as some rights of participation. Further, the court should not have disregarded the expert's belief that the tax benefits were speculative in nature. The partnerships were taking untested positions in regard to deductions and all of them were likely to be challenged and disallowed by the IRS. In fact, many of the deductions were ultimately disallowed. Further, the predictions contained in the offering memoranda were just that—predictions. The partnerships had no track record. Any predictions as to the ultimate success of the operations were speculative. Thus, we hold that Campbell's profits interests in Phillips House, The Grand and Airport were without fair market value at the time he received them and should not have been included in his income for the years in issue.

III. CONCLUSION

The decision of the tax court holding that the Campbells should have included the receipt of profits interests in Phillips House, The Grand and Airport in ordinary income in the year of receipt is reversed. The remainder of the decision, in which Campbell alleges no error in this appeal, is affirmed.