# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2228/2320

_____

Urban Hotel Development       *
Company, Inc.,      *
     *
    Appellant/Cross-Appellee,      *
     *   Appeal from the United States
    v.      *   District Court for the
     *   Western District of Missouri.
President Development Group,      *
L.C., President Hotel Investors,      *
L.C., President Hotel, L.C.,      *
Ronald D. Jury, Trustee of the      *
Ronald D. Jury Trust, and Plaza 45,      *
L.C.,      *
     *
    Appellee/Cross-Appellant.      *

_____

Submitted: March 14, 2008
Filed: July 29, 2008

_____

Before MURPHY, BRIGHT, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Urban Hotel Development Company, Inc. ("UHDC") sued President Development Group, L.C., President Hotel Investors, L.C., President Hotel, L.C. (collectively "Development Companies"), Ronald D. Jury as Trustee of Ronald D. Jury Trust ("Jury Trust"), and Plaza 45, L.C. ("Plaza 45") for declaratory judgment, breach of contract, and breach of fiduciary duty. UHDC, Jury Trust, and Plaza 45

were all members of the Development Companies, which were limited liability companies organized to redevelop the President Hotel in Kansas City, Missouri. Before redevelopment of the hotel, UHDC was removed as a member.

The district court[1] granted summary judgment for Jury Trust, Plaza 45, and the Development Companies, finding UHDC's removal was valid under the operating agreements, and there was no evidence of breach of fiduciary duty or a *quantum meruit* claim. However, the district court granted summary judgment for UHDC on the breach of contract claim. After a bench trial, the court entered a $10,000 judgment for UHDC. On appeal, UHDC insists the removal was invalid and, therefore, it still is a member of the Development Companies. Alternatively, UHDC seeks $167,667 in damages. The Development Companies cross-appeal, claiming no evidence supports even $10,000 in damages. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

In this diversity suit, this court applies the substantive law of the state in which the district court sits. ***Roemmich v. Eagle Eye Dev., LLC***, 526 F.3d 343, 348 (8th Cir. 2008). Here, this court applies Missouri law, reviewing de novo the district court's interpretation of it. *See **id.***

This court reviews de novo the grant of summary judgment. ***Id.*** Summary judgment is appropriate if the evidence, viewed most favorably to the non-moving party, establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. ***Id.***; *see also* **Fed. R. Civ. P. 56(c)**.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

UHDC asserts its removal was ineffective because the operating agreements authorized only a redemption, not a removal, of a member; it did not receive written notice of the redemption, nor was the redemption made with a Major Decision Approval; and it did not receive the Redemption Price.

UHDC was removed as member of the Development Companies by letter dated May 2, 2003:

> This letter is to serve as official notice that pursuant to the Operating Agreements of President Hotel, LC, President Hotel Investors, LC, and President Development Group, LC, that Urban Hotel Development Company, Inc. is being removed from these companies . . . .

The letter was signed by Ronald D. Jury, as Managing Member of the Development Companies.

Article X, Section 10.1(a) of the operating agreements authorized the redemption of a member's interest: "Each member hereby grants to the Company the right to redeem . . . all or any portion of such Member's Interest in the Company. The Company shall exercise any Member Redemption Option by delivering notice to such Redeeming Member (the 'Redemption Notice')." To redeem a member's interest, section 10.1(b) required a "Major Decision Approval," a "written approval by the holders of more than sixty-five percent . . . of the Distribution Percentages owned by all the Members." Under section 10.2, payment of the Redemption Price was to be made "not more than ten (10) business days following the receipt of the Redemption Notice."

The distribution percentages of the Development Companies were:

1. *President Development Group, L.C.*: Jury Trust and Plaza 45 each had a 50% distribution percentage and UHDC a 0% distribution percentage until $1,500,000 in net profits was distributable to the

members. At that point, Jury Trust would have a 45% distribution percentage, Plaza 45 a 30% distribution percentage, and UHDC a 25% distribution percentage.

2. *President Hotel Investors, L.C.*: Jury Trust had a 53% distribution percentage, Plaza 45 a 27% distribution percentage, and UHDC a 20% distribution percentage.

3. *President Hotel, L.C.*: Jury Trust had a 53% distribution percentage, Plaza 45 had a 27% distribution percentage, and UHDC a 20% distribution percentage.

Under Missouri law, a limited liability company is governed by statute and the operating agreement. *See **In re Tri-River Trading, LLC***, 329 B.R. 252, 267 (B.A.P. 8th Cir. 2005), *citing* **Mo. Ann. Stat. § 347.010**; *see also* **Mo. Ann. Stat. § 347.079**. Operating agreements are interpreted by ascertaining the intent of the parties and giving effect to it. ***Am. Anglian Envtl. Techs., L.P. v. Envtl. Mgmt. Corp.***, 412 F.3d 956, 958 (8th Cir. 2005). This court enforces a clear and unambiguous operating agreement, giving maximum effect to Missouri's policy of freedom of contract and the enforceability of operating agreements. ***Id.*** at 958, 962.

As relevant here, the statute states: "A person ceases to be a member of a limited liability company . . . [when] [t]he member is expelled as a member in accordance with the operating agreement." **Mo. Ann. Stat. § 347.123(3)**. The operating agreements, here, permit the *redemption* of a member's interest; the terms *removal* or *expelled* are not used. Emphasizing the distinction between these words, UHDC insists its removal was ineffective because the letter does not indicate a redemption of UHDC's interest. The district court disagreed: "The ultimate question is whether the operating agreements in this case provided a mechanism by which Defendants' could end a member's relationship with the Development Companies. Whether that provision in the agreement is called a right of redemption or right of removal makes no difference to the ultimate outcome."

-4-

Ascertaining the intent of the parties and giving effect to it, it is clear that the redemption clause in the operating agreements provides a mechanism to *remove* or *expel* members from the Development Companies. The right to redeem a member's interest is broad, granting "the Company the right to redeem . . . all or any portion of such Member's Interest in the Company." This power is not limited by the use of the word *redemption*. It requires notice and a Major Decision Approval, and after the right is exercised, payment of the Redemption Price.

The Development Companies provided written notice to UHDC on May 2. UHDC's removal was authorized by a Major Decision Approval. Jury Trust and Plaza 45 owned more than 65 percent of the distribution percentages of all members in each of the three companies. The letter was signed by Jury, the managing member of the Development Companies, Jury Trust, and Plaza 45. Consequently, Jury's signature represents the written approval of the members. *See **In re Tri-River Trading***, 329 B.R. at 267 ("The statute also contemplates that, if the members agree, a Missouri limited liability company may be operated by a manager selected by its membership."), *citing* **Mo. Ann. Stat. § 347.088.1**. UHDC, however, was not paid the Redemption Price within 10 days after the May 2 letter; this was a breach of contract.

UHDC asserts that the non-payment of the Redemption Price renders its removal ineffective, claiming a redemption requires all three steps – notice, Major Decision Approval, and payment. Contrary to UHDC's assertion, its removal is effective. Under section 10.1 of the operating agreements, the redemption of a member's interest requires notice and Major Decision Approval. Under section 10.2, payment of the Redemption Price is required. According to the operating agreements, section 10.2 can be breached without breaching section 10.1. Thus, the district court did not err in ruling UHDC's removal was effective, despite non-payment of the Redemption Price.

The court also did not err in ruling the value of the Redemption Price is a question of fact.  *See **Campbell v. Comm'r***, 943 F.2d 815, 823 (8th Cir. 1991).

UHDC claims the members of the Development Companies – Jury Trust and Plaza 45 – breached their fiduciary duties of care and loyalty when they removed UHDC.  Because the members relied in good faith on the operating agreements, the district court did not err in concluding there was no evidence of breach of fiduciary duty.  *See **In re Tri-River Trading***, 329 B.R. at 267  ("[A] member, manager, or other person performing duties for or with fiduciary duties to the LLC may rely in good faith on provisions of the operating agreement."), *citing* **Mo. Ann. Stat. § 347.088.2(1)**; *see also **Unigroup, Inc. v. O'Rourke Storage & Transfer Co.***, 980 F.2d 1217, 1221 (8th Cir. 1992) ("It does not follow that acting according to the terms of the by-law is a breach of good faith and fair dealing.").

II.

UHDC says the Redemption Price is $167,667, while the Development Companies say it is zero.  Under the operating agreements, the Redemption Price here is "the actual tax basis of the redeeming member."  Actual tax basis is not defined in the agreements.  However, the district court stated: "the redemption price to which UHDC is entitled . . . [is] the fair market value, if any, of the interests transferred to UHDC under the terms of the operating agreements at the time of receipt."  After a bench trial, the district court found the fair market value was $10,000 and entered judgment for UHDC.

After a bench trial, this court reviews legal conclusions de novo and factual findings for clear error.  ***Roemmich v. Eagle Eye Dev., LLC***, 526 F.3d 343, 353 (8th Cir. 2008).  "Under the clearly erroneous standard, 'we will overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error was made.'" ***Id.***, *quoting **Richardson v. Sugg***, 448 F.3d 1046, 1052 (8th Cir.

2006). There is a strong presumption that the factual findings are correct. ***Am. Fed'n of State, County and Mun. Employees v. City of Benton***, 513 F.3d 874, 883 (8th Cir. 2008).

For partnerships, a tax basis results from contributing property, including money, *see* **26 U.S.C. §§ 722, 723**, or assuming the liabilities of a partnership, *see* **26 U.S.C. § 752**.[2] A tax basis also can be obtained by exchanging services for a partnership interest. *See **Mark IV Pictures, Inc. v. Comm'r***, 969 F.2d 669, 672 (8th Cir. 1992). The value of the services is determined by the fair market value of the interest received. ***Id.*** Generally, the fair market value is "the price at which property would change hands in a transaction between a willing buyer and a willing seller, neither being under compulsion to buy nor to sell and both being informed of all the relevant circumstances." ***Campbell v. Comm'r***, 943 F.2d 815, 823 (8th Cir. 1991) (internal quotation marks omitted). Whether UHDC contributed services in exchange for an interest in the Development Companies is a question of fact, as is the fair market value of those services. *See **Mark IV Pictures***, 969 F.2d at 672; *see also **Campbell***, 943 F.2d at 823.

Here, substantial evidence in the record demonstrates UHDC contributed services to the Development Companies, and the fair market value of those services was $10,000. Frank Forte, UHDC's president, contacted several businesses to assist with financing, financial consulting, interior design, historic preservation, environmental cleanup, and franchising. Three of these businesses were ultimately part of the redevelopment efforts: Blackwell Sanders Peper Martin LLP, HVS International, and Fahnestock & Co. Inc. These firms were instrumental in obtaining tax increment financing, a necessary step in redeveloping the hotel. Even Jury, in the removal letter, indicated: "Your experience and knowledge of vendors in the hotel industry as well as financing sources has been very useful over the last year." Forte

---

[2]The parties stipulated before trial that UHDC did not provide money or property to the Development Companies, nor did it assume debt or liability.

also made several trips to Kansas City from his home in Brentwood, Tennessee, expending time and money. As for Jury's testimony that the "actual tax basis" was zero, this court must give due regard to the district court's opportunity to judge the witness's credibility. *See* **Fed. R. Civ. P. 56(a)(6)**; *see also* ***Allen v. Tobacco Superstore, Inc.***, 475 F.3d 931, 936 (8th Cir. 2007) (credibility determinations are "virtually unassailable on appeal"). Therefore, the district court's findings of "the value of the services UHDC provided in exchange for its interests" are not clearly erroneous.

## III.

The judgment of the district court is affirmed.


BRIGHT, Circuit Judge, concurs in the result only.

_____