# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2855

_____

Elliot Kaplan; Jeanne Kaplan

*Plaintiffs - Appellants*

v.

Mayo Clinic; Mayo Foundation; Mayo Foundation for Medical Education and Research; Mayo Rochester, Inc.; Mayo Clinic Rochester, Inc.; Lawrence J. Burgart

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 18, 2016
Filed: February 13, 2017

_____

Before LOKEN, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Elliot and Jeanne Kaplan sued Dr. David Nagorney, Dr. Lawrence Burgart, and Mayo Clinic and its affiliates ("Mayo") for medical malpractice, breach of contract, lack of informed consent, and loss of consortium following a surgical procedure

performed on Elliot after a misdiagnosis. The district court[1] dismissed all claims against Dr. Nagorney, the surgeon who performed the medical procedure, because the Kaplans failed to produce expert testimony by the scheduled deadline. The case proceeded to trial against Mayo and Dr. Burgart on the breach-of-contract and malpractice claims. At the close of the plaintiffs' case-in-chief, the district court granted Mayo's motion for judgment as a matter of law on the breach-of-contract claim. Following trial, the jury returned a verdict in favor of the defendants on the malpractice claim.

On appeal, we upheld the jury verdict but vacated the judgment in favor of Mayo on the breach-of-contract claim. This court held that the district court erred by requiring expert testimony to establish a contract breach and remanded the claim to trial. *Kaplan v. Mayo Clinic (Kaplan I)*, 653 F.3d 720, 729 (8th Cir. 2011) ("The plaintiffs therefore offered sufficient evidence in their case-in-chief to support a breach-of-contract claim against Mayo without offering the testimony of an expert."). After a four-day bench trial, the district court entered judgment in favor of Mayo on the breach-of-contract claim. The Kaplans again appeal, and we affirm.

## I. *Background*

Elliot Kaplan was hospitalized in Kansas City, Missouri, for intense abdominal pain. The hospital staff performed a computerized tomography (CT) scan and found a three-to-four centimeter mass on his pancreas. After a needle biopsy, hospital doctors diagnosed Elliot with pancreatic cancer. The hospital referred him to Dr. Nagorney at the Mayo Clinic in Rochester, Minnesota for surgery.

Before heading to the Mayo Clinic, Elliot's condition began improving. He became skeptical of his diagnosis. His father, a cardiologist, sent a letter to

---

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

Dr. Nagorney expressing his concerns about whether Elliot had been properly diagnosed. In response, Dr. Nagorney had two pathologists at the Mayo Clinic perform independent analyses of Elliot's biopsy. Both pathologists confirmed the cancer diagnosis.

When the Kaplans met with Dr. Nagorney, he explained to the couple the need for immediate surgical intervention. Dr. Nagorney recommended the Whipple procedure, an invasive surgery that typically includes the removal of the wide part of the pancreas, the anterior intestine, the gallbladder, and part of the stomach. In explaining the procedure, Dr. Nagorney explained that during the surgery he would be testing the tissue surrounding the pancreas for cancerous cells to ensure complete removal. Elliot, still unconvinced of his diagnosis, wanted more proof. He testified that he asked Dr. Nagorney to do an additional biopsy of his pancreas during the procedure to ensure that he had cancer. Dr. Nagorney denied that Elliot made this request.

Dr. Nagorney successfully performed the Whipple procedure without doing a biopsy of the pancreas during the procedure as he had allegedly promised. When pathologists tested the removed tissue, they discovered that the tumor in Elliot's pancreas was benign. Elliot suffered not from cancer, but chronic pancreatitis. His initial biopsy resulted in a false positive. Since having the Whipple procedure, Elliot continues to suffer negative health complications that affect his daily life.

On remand from this court, the district court considered whether Elliot and Dr. Nagorney entered into a contract under Minnesota law to perform a biopsy of his pancreas during the Whipple procedure. Both parties consented to a bench trial, during which the district court heard evidence relating to the accuracy of needle biopsies. According to the evidence, the possibility of a false positive in a biopsy of pancreatic cancer is far less than one percent, but almost a ten-percent chance exists that such a biopsy would present a false negative. Dr. Nagorney testified that Elliot's

case presented the only false positive for pancreatic cancer in a needle biopsy that he had ever encountered in his decades-long career. Dr. Nagorney also testified that he trusted the accuracy of the biopsy and that doing another biopsy during surgery would have gone against his standard practices. Mayo presented expert testimony during trial demonstrating that a typical surgeon would not rely on the negative result of a biopsy during surgery because the likelihood of a false negative would far outweigh the likelihood of a false positive.

According to the evidence, physicians in general—and specifically Dr. Nagorney—avoid making promises like the alleged promise made to the Kaplans. The district court concluded that Dr. Nagorney's explanation of the Whipple procedure likely confused the Kaplans, particularly Elliot. The court believed that Dr. Nagorney explained to them that he would be using biopsies during the surgery to ensure that the cancer had not spread to surrounding tissues. These results would determine how he would proceed with the Whipple procedure, not whether he would proceed in the first place. Finding Dr. Nagorney's version of the conversation more credible in light of the circumstances, the district court concluded that Dr. Nagorney did not promise to do a biopsy of Elliot's pancreas during the surgery and that no meeting of the minds occurred to form a contract. Because no contract existed, the breach-of-contract claim failed. The court therefore entered judgment in favor of Mayo.

II. *Discussion*

The Kaplans appeal the district court's factual findings regarding contract formation and its ultimate judgment. "After a bench trial, this court reviews legal conclusions de novo and factual findings for clear error." *Urban Hotel Dev. Co. v. President Dev. Grp., L.C.*, 535 F.3d 874, 879 (8th Cir. 2008). In Minnesota, whether a contract has been formed is a question of fact. *Watkins Inc. v. Chilkoot Distrib., Inc.*, 655 F.3d 802, 805 (8th Cir. 2011) (applying Minnesota law). Factual findings are only overturned if: (1) the findings are not supported by substantial evidence in

the record, (2) the findings are based on an erroneous view of the law, or (3) the court is left with the definite and firm conviction that an error has been made. *Tadlock v. Powell*, 291 F.3d 541, 546 (8th Cir. 2002). "We give due regard to the opportunity of the district court to judge the credibility of the witnesses." *Id.*

The Kaplans argue that the district court committed clear error in finding that no contract was formed. First, they argue that we settled the contract formation issue in *Kaplan I*, and the district court was "bound to honor" this mandate as law of the case. *See United States v. Castellanos*, 608 F.3d 1010, 1016 (8th Cir. 2010). This assertion misconstrues our previous holding. In *Kaplan I*, we held that the evidence in the record, viewed in the light most favorable to the plaintiffs, was sufficient for a reasonable jury to find contract formation. 653 F.3d at 728. Our holding, however, did not concomitantly preclude the district court, as fact finder, from determining otherwise after weighing the evidence. The district court did not violate the law of the case by determining that no contract was formed between the Kaplans and Mayo.

Second, the Kaplans argue that our mandate in *Kaplan I* required the district court to exclude all expert testimony on the contract-formation issue. The Kaplans contend that the district court erred by relying on expert testimony in finding that no contract was formed. They argue that without the aid of this expert testimony, the defendants failed to present sufficient evidence for a finding in their favor. We disagree. In *Kaplan I*, we concluded that Minnesota law did not require the Kaplans to present expert affidavits to establish a prima facie case of medical malpractice. We did not, however, forbid the defendants' use of expert testimony to establish a defense to the claim of a special contract in the performance of the operation. Our mandate did not prohibit the defendants' use of expert testimony; therefore, the Kaplans' sufficiency-of-the-evidence argument necessarily fails. The district court's findings were supported by substantial evidence on the record.

Third, the Kaplans assert that our review of the factual findings of the district court should leave us with a firm conviction that the district court made an error. To support this argument, they allege minor inconsistencies in the record regarding what was said during their meeting with Dr. Nagorney. These inconsistencies all point to one real question: Did Dr. Nagorney promise to do a biopsy of Elliot's pancreas during the Whipple procedure? The district court found that Dr. Nagorney did not make such a promise and that Elliot misunderstood the description of the procedure. If the district court's factual conclusions are plausible in light of the record, we will not reverse the decision even if we might disagree with its conclusion. *Story v. Norwood*, 659 F.3d 680, 685 (8th Cir. 2011).This factual finding does not provide us with the conviction that the district court committed clear error. "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *In re Nevel Props. Corp.*, 765 F.3d 846, 850 (8th Cir. 2014) (ellipsis in original) (quoting *In re Papio Keno Club, Inc.*, 262 F.3d 725, 729 (8th Cir. 2001)).

Finding no clear error, we uphold the district court's factual finding that the Kaplans and Dr. Nagorney did not form a contract. Without a contract, the questions of breach, damages, and all derivative claims become moot, and we decline to address them.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____