# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-1735

———————————————

Acciona Windpower North America, LLC

*Plaintiff - Appellee*

v.

City of West Branch, Iowa

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

——————————

Submitted: December 15, 2016
Filed: February 7, 2017

——————————

Before KELLY and MURPHY, Circuit Judges, and MONTGOMERY,[1] District
Judge.

——————————

MURPHY, Circuit Judge.

In 2008 the city of West Branch, Iowa (West Branch or the city) entered into
an agreement with Acciona Windpower North America, LLC (Acciona), a company

———————————————

[1]The Honorable Ann D. Montgomery, United States District Judge for the
District of Minnesota, sitting by designation.

that manufactures and installs wind generation systems. Under the agreement, Acciona would expand its business in West Branch if the city would consider rebating a portion of Acciona's taxes each year for eight years. West Branch paid rebates for three years, but then refused to pay subsequent rebates and ultimately cancelled the agreement. The district court[2] concluded that West Branch's actions breached the contract and, after a bench trial, awarded Acciona $494,924.28 in damages. West Branch appeals, and we affirm.

I.

Acciona and West Branch entered into a tax increment financing (TIF) development agreement in 2008. TIF agreements are authorized by Iowa law, see Iowa Code § 403.6, to encourage economic development in specified areas, see Fults v. City of Coralville, 666 N.W.2d 548, 551 n.1 (Iowa 2003). The agreement between West Branch and Acciona obligated the city to consider providing certain benefits to Acciona if it expanded its business in West Branch. Most crucially, the agreement obligated West Branch to consider "rebating to ACCIONA, for a period [of] eight years, incremental property taxes actually paid with respect to" improvements made by Acciona in West Branch. The agreement made clear that all rebate payments were "subject to annual appropriation of the City Council." In the event that the city failed to appropriate a rebate to Acciona in a given year, the agreement specified that "the remaining rebate schedule shall be extended by one year so as to allow eight full years of rebates under this Agreement."

West Branch paid rebates to Acciona pursuant to the agreement in fiscal years 2010, 2011, and 2012. In those years the procedure for determining whether a rebate would be paid was the same. We therefore take fiscal year 2010 as an example. In

---

[2]The Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

November 2008 the West Branch city council approved a resolution rebating a portion of Acciona's taxes for fiscal year 2010 to the company. The rebate was included in the city's budget which was adopted in March 2009. After Acciona timely paid its fiscal year 2010 taxes, the city formally approved and paid the rebate. Approximately the same process was followed in fiscal years 2011 and 2012.

In November 2011 West Branch's city council approved a resolution obligating for appropriation a tax rebate to Acciona for fiscal year 2013. The authorized rebate was subsequently included in the city's budget which was adopted in March 2012. After Acciona paid its taxes for fiscal year 2013, the city budget was amended and the rebate to Acciona was removed. The city failed to pay a rebate to Acciona for fiscal year 2014 under similar circumstances. Although the 2014 rebate was initially approved in November 2012, and included in the city's budget in March 2013, the city eliminated the rebate in amending its budget in May 2014.

In addition to failing to pay Acciona rebates for fiscal years 2013 and 2014, West Branch cancelled the agreement in May 2013 on the ground that Acciona was failing to meet its contractual obligations. Acciona responded by filing this breach of contract action in March 2014, and the parties proceeded to file cross motions for summary judgment. The district court ruled that West Branch had breached its agreement by cancelling without cause. The court also decided that Acciona was not entitled to damages for rebates that could be due in future fiscal years, however, because the agreement only obligated the city to consider the appropriation of rebates. The court therefore granted Acciona's request for specific performance for the future fiscal years. Finally, the court concluded that genuine issues for trial remained on the question of whether Acciona was entitled to damages for prior fiscal years in which the city had obligated rebates for appropriation but subsequently failed to pay them.

After a bench trial, the district court ruled that Acciona was entitled to recover compensatory damages for the tax rebates obligated for appropriation but not paid in

fiscal years 2013 and 2014. West Branch filed a motion to amend or correct the judgment which was denied. West Branch appeals, arguing that the district court erred in finding that Acciona is entitled to damages for rebates not paid in fiscal years 2013 and 2014.

## II.

As this appeal follows a bench trial, we review the district court's "legal conclusions de novo and factual findings for clear error." Urban Hotel Dev. Co. v. President Dev. Group, L.C., 535 F.3d 874, 879 (8th Cir. 2008). It is uncontested that Iowa law applies in this diversity case. See id. at 877. Iowa courts "generally review the construction and interpretation of a contract as a matter of law." Hartig Drug Co. v. Hartig, 602 N.W.2d 794, 797 (Iowa 1999). An exception to this rule occurs when a lower court's contract "interpretation was predicated upon extrinsic evidence," as those findings "are binding on appeal if supported by substantial evidence." Id.

## A.

West Branch first argues that the district court erred in its interpretation of the parties' agreement. Specifically, West Branch contends that the district court erred in concluding that the city breached the agreement when it failed to pay rebates in fiscal years 2013 and 2014 that had been obligated for appropriation. West Branch notes that all rebate payments under the agreement are "subject to annual appropriation of the City Council" and suggests that a rebate is not appropriated until the moment at which it is paid. In other words, West Branch argues that under the agreement it had the power to decide not to pay the rebates obligated for appropriation up until the moment the rebate checks were sent. In support of its argument West Branch points to the meaning of "appropriate," witness testimony at trial, and an admission by Acciona at the summary judgment stage. None of these

-4-

pieces of evidence singly or in combination are sufficient to persuade us that West Branch's interpretation of the parties' agreement is correct.

Under Iowa law, a key rule of contract interpretation is that courts "give effect to the language of the entire contract according to its commonly accepted and ordinary meaning." Hartig Drug Co., 602 N.W.2d at 797. A corollary of this rule is that it is "well-established . . . that an 'interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.'" DeJong v. Sioux Ctr., Iowa, 168 F.3d 1115, 1120 (8th Cir. 1999) (quoting Fashion Fabrics of Iowa, Inc. v. Retail Inv'rs Corp., 266 N.W.2d 22, 26 (Iowa 1978)). As the district court noted in its thorough and well reasoned opinion, the parties' agreement specifies that West Branch must annually certify "no later than December 1 . . . the amount obligated for appropriation for rebate to Acciona." The agreement further states that, in the event the city decides to obligate a rebate for appropriation, "[t]he rebate shall be paid to ACCIONA within thirty days of receipt by the City of the incremental taxes paid." If we were to accept West Branch's interpretation of the parties' agreement and conclude that the city could permissibly decline at any time to issue a rebate payment it had obligated for appropriation, this contractual provision would be "of no effect." See DeJong, 168 F.3d at 1120 (quoting Fashion Fabrics of Iowa, 266 N.W.2d at 26). This interpretation of the parties' agreement is disfavored under Iowa law.

The better interpretation of the parties' agreement—one that gives full effect to all of the agreement's provisions—is the interpretation adopted by the district court and advanced by Acciona on appeal. Under this view, if the city council elects to obligate a rebate for appropriation, nothing in the agreement prevents the city council from changing its mind and "unappropriating" the rebate up until the moment Acciona pays its taxes for a given fiscal year. Once Acciona pays its taxes, however, the contractual provision mandating payment of the rebate within thirty days bars the city from deciding not to pay a previously obligated rebate. In other words, a legal

obligation to pay rebates that have been obligated for appropriation by the city council and approved as part of the city's budget arises under the agreement once Acciona pays its taxes for a given fiscal year. We conclude this is the proper interpretation of the parties' agreement, and we agree with the district court that West Branch breached the agreement when it declined to pay rebates it had obligated for appropriation in fiscal years 2013 and 2014 after Acciona had already paid its taxes for those years.

West Branch's arguments for rejecting this interpretation of the plain language of the parties' agreement are not persuasive. For example, West Branch cites to the testimony of two trial witnesses, one of whom testified for Acciona, in support of its argument that the parties understood the word "appropriate" in their agreement to be synonymous with "pay" and that West Branch therefore never appropriated rebates for Acciona in fiscal years 2013 and 2014. While extrinsic evidence like that cited by West Branch may be considered when interpreting a contract, "the words of the agreement are still the most important evidence of the part[ies'] intentions at the time they entered into the contract." Pillsbury Co. v. Wells Dairy, Inc., 752 N.W.2d 430, 436 (Iowa 2008). We have already concluded that the plain language of the parties' agreement supports the interpretation adopted by the district court, not the interpretation advocated by West Branch. Moreover, the district court found that the Acciona witness who testified that the city had not made an "appropriation for payment" in fiscal years 2013 and 2014 did not mean that the rebates had not been appropriated, but rather that the rebates had not been paid. The district court's findings regarding the meaning and weight to be accorded witness testimony are factual determinations we review for clear error. See Urban Hotel Dev., 535 F.3d at 879; Pillsbury, 752 N.W.2d at 436. Since we see no clear error here, we conclude that the evidence at trial does not require adopting the West Branch interpretation of the parties' agreement.

On a related matter, we agree with the district court that an admission made by Acciona at the summary judgment stage does not compel a conclusion that the city did not appropriate rebates in fiscal years 2013 and 2014. It is true, as West Branch points out, that in its summary judgment papers Acciona averred that it was undisputed that "[t]he City did not appropriate the $265,140 rebate to be paid to Acciona" for fiscal year 2014. The district court noted, however, that Acciona has always argued that the rebate was appropriated, just not paid. In other words the district court concluded that Acciona, like its witness at trial, may have been imprecise with a term of art but did not intend to admit that the rebate was never appropriated. We agree. We have previously noted that "[a] judicial admission must be deliberate, clear, and unambiguous," and we generally reject efforts to convert "carelessly worded" stipulations into dispositive admissions. Grandoe Corp. v. Gander Mountain Co., 761 F.3d 876, 885 (8th Cir. 2014) (internal quotation marks omitted). We agree with the district court that Acciona's admission at summary judgment is best read as a poorly worded effort to admit that it is undisputed that the rebates were never paid, not an unambiguous admission that the rebates were never appropriated. West Branch is therefore not entitled to relief on this ground.

B.

West Branch also argues that if the district court's interpretation of the parties' agreement stands, the agreement itself becomes null and void because it "purports to contract away the city's legislative power and duty to make—and reconsider—annual appropriation decisions." There is no question, however, that the Iowa Code permits municipalities to enter into TIF agreements to stimulate economic development. See, e.g., Fults, 666 N.W.2d at 552–53 (citing Iowa Code § 403). There are limits to municipalities' powers with respect to such agreements, such as the limits imposed by the Iowa Constitution on municipal indebtedness. See id. at 556. Municipalities generally avoid overstepping their bounds with respect to TIF agreements by making the payment of rebates under such agreements subject to annual appropriation. In

-7-

other words, TIF agreements typically promise only that a city will consider appropriating a rebate each year and avoid promising that such a rebate will actually be paid. See, e.g., id. at 557. This is precisely the structure of the agreement between Acciona and West Branch in this case, and it is a structure that has routinely been approved by Iowa courts. See id.

West Branch nonetheless argues that the parties' agreement is null and void because the agreement limits West Branch's ability to decline to pay rebates at any time. In other words, West Branch contends that the fact that the agreement requires the city to pay rebates already obligated for appropriation within thirty days of Acciona paying its taxes amounts to an impermissible delegation of the city's legislative power to appropriate funds. We disagree. First, and as noted above, TIF agreements are clearly authorized by Iowa law, see Iowa Code § 403.6, which distinguishes the agreement here from the contracts in the cases on which West Branch relies for its legislative delegation argument, see, e.g., Marco Dev. Corp. v. City of Cedar Falls, 473 N.W.2d 41, 43 (Iowa 1991) (concluding that a contract to widen a street was an impermissible delegation of a city's legislative function). Second, chapter 403.6 of the Iowa Code specifies that it should be "liberally interpreted to achieve the purposes of th[e] chapter" and notes that cities have the power "to make and execute contracts and other instruments necessary or convenient to the exercise of its powers under th[e] chapter." Iowa Code § 403.6(1). Although the Iowa Code may not specifically authorize cities to agree to pay rebates that have been obligated for appropriation within a set time frame, a reasonable interpretation of this part of the Iowa Code suggests that cities have the power to include contractual provisions not specifically authorized so long as the provisions do not meaningfully limit the city's legislative powers. Such is the case here.

The timing provision challenged by West Branch is extremely narrow and essentially procedural; as noted above, West Branch could decide to unappropriate rebates it had obligated for appropriation up until the moment at which Acciona pays

its taxes for a given year.  Under these circumstances, we conclude this provision and the agreement as a whole are enforceable under Iowa law.

## C.

Finally, West Branch argues that the district court abused its discretion by "allow[ing] Acciona to change its damages theory and calculation on the eve of trial." Before the district court, West Branch sought relief from Acciona's allegedly improper actions through a motion for sanctions that invoked Federal Rules of Civil Procedure 16(f) and 37(c).  This motion was largely denied by the district court.  We review a district court's decision on whether to impose sanctions for abuse of discretion.  See Carmody v. Kan. City Bd. of Police Comm'rs, 713 F.3d 401, 404–05 (8th Cir. 2013) (Rule 37(c)); Nick v. Morgan's Foods, Inc., 270 F.3d 590, 594–95 (8th Cir. 2001) (Rule 16(f)).  We see no abuse of discretion here.

West Branch argues that Acciona was improperly permitted to change its damages calculation on the eve of trial.  Specifically, West Branch claims that Acciona revealed too late that it would seek damages for both fiscal years 2013 and 2014 and that Acciona "ramped up the amount of tax rebates claimed" shortly before trial.  The district court concluded that Acciona's actions were essentially harmless because they resulted in "no surprise or prejudice to the City."  We see no abuse of discretion in that decision.  Contrary to West Branch's argument, Acciona sought compensatory damages for multiple fiscal years from the very beginning of this lawsuit.  See, e.g., Compl. at 3–4 (JA0007–08) (requesting compensatory damages for West Branch's breach of contract).  Acciona's pretrial clarification that the company would seek compensatory damages for fiscal years 2013 and 2014 was therefore entirely consistent with the theory of damages articulated by Acciona at the outset of this case, not a sea change on the eve of trial.  This fact distinguishes this case from those on which West Branch relies for its argument that Acciona should not have been permitted to seek damages for fiscal year 2013.  See, e.g., US Salt, Inc. v.

Broken Arrow, Inc., No. 07-1988 (RHK/JSM), 2008 WL 2277602, at *3–4 (D. Minn. May 30, 2008) (disallowing a party to change its theory of damages on the eve of trial from lost profits to reliance, incidental, or consequential damages).

Furthermore, the damages calculation used by Acciona appears to have been based on information in the parties' agreement and documents originally in West Branch's control. The manner in which Acciona calculated its damages should therefore not have surprised or prejudiced the city. Indeed, it appears the city concedes that the damages calculation used by Acciona and the district court is accurate, as West Branch does not challenge the damage calculations themselves on appeal. Under these circumstances, we cannot find that the district court abused its discretion by concluding that Acciona's alleged improper actions were harmless and declining to sanction the company.

III.

Accordingly, we affirm the judgment of the district court.

_____