# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-2345

_____

Advance Conveying Technologies, LLC

*Cross Claimant - Appellee*

v.

Lemartec Corporation

*Cross Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: May 15, 2019
Filed: July 25, 2019

_____

Before BENTON, WOLLMAN, and GRASZ, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Following a four-day bench trial, the district court[1] entered judgment in favor of Advance Conveying Technologies, LLC (ACT), on ACT's breach of contract claim against Lemartec Corporation (Lemartec). On appeal, Lemartec argues that the

_____

[1] The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

district court erred in concluding that Lemartec's bid package was incorporated into the parties' contract (the purchase order). Although we conclude that the bid package was not so incorporated in so many words, we nonetheless affirm the judgment, because when the contract is considered in light of the usage-of-trade evidence that the district court found credible, there is no error in the determination that Lemartec breached the purchase order.

Lemartec served as the general contractor for the construction of a chlor-alkali production plant in Eddyville, Iowa. Chlor-alkali is an industrial process that uses salt and water for the production of chlorine, caustic soda, hydrochloric acid, and sodium hypochlorite. The Eddyville plant required a conveyor system that would transport salt from rail cars and semi-trucks into a storage facility and to the production floor. BRPH Companies (BRPH) served as the architect for the project.

Lemartec published a bid package to solicit bids for the conveyor system. The bid package set forth certain responsibilities for the conveyor-system subcontractor. It required the submission of "engineering design drawings and shop detail drawings" to the owner or the owner's representative and disallowed the subcontractor from starting fabrication until it "received drawings marked 'APPROVED' or 'APPROVED AS NOTED.'" The bid package also required that the subcontractor follow certain design and construction codes, including the American Institute of Steel Construction Code of Standard Practice for Steel Buildings and Bridges (AISC code). Lemartec accepted the revised bid proposal that ACT submitted pursuant to the bid package.

Lemartec and ACT entered into the purchase order on December 18, 2013. Attached to the purchase order and "forming a part of this Subcontract" were a "Scope of Work Clarification" document and ACT's bid proposal. The scope of work document required ACT to comply with "applicable code requirements" and "the reasonable intent of the Architect/Engineer." With respect to the delivery schedule,

ACT's bid proposal provided four to six weeks for general arrangement "approval drawings," two to three weeks for certified drawings, and sixteen to twenty weeks for fabrication.

ACT submitted its general arrangement drawings to Lemartec for approval on January 27, 2014. Lemartec stamped the drawings on January 28, 2014, as "Reviewed by G.C." and "Final Review pending AE of Record," but neither Lemartec nor the architect/engineer of record approved the drawings. The project was delayed based on the changes in boundary conditions that Lemartec communicated to ACT throughout the summer of 2014.[2]

Lemartec directed ACT in September 2014 to immediately deliver components for installation. ACT protested that it had not yet received final approval of its designs. ACT warned that expedited fabrication and delivery was not reasonable and would ultimately result in delays and the need for rework. Lemartec nonetheless "required ACT to fabricate and ship product before the design was complete." D. Ct. Order of May 21, 2018, at 3. After a delayed and problematic installation, the company that Lemartec had hired to install the conveyor system filed suit against Lemartec and ACT, seeking payment for the additional work it was required to complete. Lemartec and ACT filed cross-claims, which were amended or restated after Lemartec and the installer settled.

With respect to its breach of contract claim, ACT argued that the purchase order required ACT to comply with "applicable code requirements," which ACT argued included the AISC code. Dr. George Wandling, a professional engineer licensed in Iowa, testified that the AISC code was the industry standard and that it

---

[2]Boundary conditions are the interfaces of the ACT system to other parts of the plant, including the rail unload station, the salt building, the concrete piers, and the foundation.

required Lemartec to approve ACT's designs. Wandling explained that although Lemartec had reviewed ACT's drawings in January 2014, neither Lemartec nor the architect had approved the drawings. Lemartec responded that the AISC code did not apply because the purchase order did not incorporate the bid package (which required the subcontractor to comply with the AISC code). Lemartec's senior project manager conceded that the purchase order required Lemartec to approve the general arrangement drawings, but asserted that Lemartec had done so in January 2014. The project manager testified that the purchase order delegated the role of architect/engineer to ACT and thus the parties' contract did not contemplate approval from BRPH.

ACT presented evidence that fabrication and delivery of the conveyor system were delayed because the owner did not specify until June 2014 the exact location of the rail and the rail unload station or the contour of the slope between the rail station and the salt building. ACT also established that Lemartec had implemented a fast-track delivery methodology, arguing that Lemartec thus bore the risk of cost overruns under the AISC code. Lemartec reiterated that the AISC code did not apply because it was not incorporated into the parties' contract. According to Lemartec, it never implemented a fast-track delivery methodology, but merely pressured ACT to timely deliver the components.

The district court concluded that "ACT proved that it had completed the work called for by the purchase order of December 18, 2013; that it did not breach any provision of the contract; and that it had not been paid the amount of $317,467.07 Lemartec owed it under the purchase order, as revised." D. Ct. Order of May 21, 2018, at 4. The court found that "[t]he delays and need for onsite modifications were the direct result of Lemartec's inadequate supervision and management of the project." Id. at 3-4. The court ultimately concluded that ACT had acted reasonably when it withheld fabrication pending Lemartec approval and that Lemartec had

-4-

implemented a fast-track project delivery methodology when it insisted "that ACT ship fabricate[d] parts before the designs were finished." Id. at 5.

The central dispute on appeal is whether the district court determined that the bid package was incorporated by reference into the purchase order or whether it determined that the AISC code constituted a usage of trade that explained or supplemented the purchase order. The district court's opinion indicates that it relied upon Lemartec's bid package in deciding that Lemartec's approval was required before fabrication could begin. In its findings of fact, the court employed the bid package's language in explaining that "Lemartec neither marked the drawings 'APPROVED' or 'APPROVED AS NOTED.'" Id. at 3. In its conclusions of law, the court stated:

> ACT was reasonable in expecting Lemartec to follow the procedure it had specifically laid out in soliciting project bids and on which ACT had relied in preparing its bid. Lemartec is bound by the words it used when it made subcontractor fabrication dependent on Lemartec approval and when it expressly stated that the terms of the bid package were included in any subsequent subcontract.

Id. at 5. With the finding that Wandling's testimony was "fully credible and persuasive," id. at 5-6, the opinion also indicates that the court credited Wandling's testimony that the AISC code is a usage of trade that explained the term "applicable code requirements" or otherwise supplemented the purchase order. The parties agree that Iowa law applies to this diversity action. Whether a contract incorporates extrinsic material is a legal question, Longfellow v. Sayler, 737 N.W.2d 148, 154 (Iowa 2007), that we review *de novo*, Acciona Windpower N. Am., LLC v. City of West Branch, 847 F.3d 963, 966 (8th Cir. 2017). The existence and scope of a usage of trade must be proved as facts. Iowa Code § 554.1303(3). We review factual findings for clear error. Acciona Windpower, 847 F.3d at 966.

Lemartec argues that the district court erred in holding that the bid package was incorporated into the contract between Lemartec and ACT. "Under the doctrine of incorporation, an extrinsic document becomes part of the contract by reference to that document in the contract." Longfellow, 737 N.W.2d at 154 (citing Hofmeyer v. Iowa Dist. Ct., 640 N.W.2d 225, 228 (Iowa 2001)). The contract must "make a clear and specific reference to an extrinsic document to incorporate the document into the contract." Id. (citing In re Estate of Kokjohn, 531 N.W.2d 99, 100-01 (Iowa 1995) (per curiam)). The purchase order here contains no clear and specific reference to the bid package. ACT argues that the purchase-order terms "contract documents" and "scope of work clarification" refer to the general requirements section of the bid package, but those terms are not sufficiently specific to establish that the parties intended to include the bid package as a part of their contract. Moreover, it is undisputed that the bid package was not included in the documents that the parties attached to the purchase order and that "form[ed] part of this Subcontract." We thus conclude that the purchase order did not incorporate by reference the bid package.

ACT argues that we should nonetheless affirm because it proved that the AISC code constituted a usage of trade that explained or supplemented the purchase order. Under Iowa law, terms of a contract "may not be contradicted by evidence of any prior agreement" but they may be "explained or supplemented" by usage of trade. Iowa Code § 554.2202(1). "Usage of trade" is defined as "any practice or method of dealing having such regularity of observance in a . . . trade as to justify an expectation that it will be observed with respect to the transaction in question." Id. § 554.1303(3). Accordingly, any "usage of trade" which the parties "are or should be aware" may supplement their agreement. Id. § 554.1303(4); C-Thru Container Corp. v. Midland Mfg. Co., 533 N.W.2d 542, 545 (Iowa 1995).

We conclude that the district court's decision to credit Wandling's testimony, coupled with its application of the AISC code, constituted a finding that the AISC code explained or supplemented the purchase order as a usage of trade. Wandling

-6-

explained that the AISC code applied to the construction of the conveyor system because it was "a trade practice and . . . a standard and custom in the industry." According to Wandling, that code required Lemartec or the owner "to give their approval that the design drawings [were] acceptable and [met] the specifications." Wandling testified that Lemartec's stamp of review did not constitute approval of ACT's drawings:

> It is not a final review, and it is not an indication that the design has been accepted by the owner and, in fact . . . the last sentence in the stamp says, Final review pending by A/E of record. That's the architect/engineer of record, and in this case that would be BRPH.

Wandling further testified that when Lemartec in September 2014 ordered ACT to commence fabrication and to deliver parts to the site immediately, it implemented a fast-track project delivery method, under which formal approval procedures were set aside to expedite the design, fabrication, and erection of the system. Wandling testified that the risk of field rework then falls to the owner under the AISC code. The district court cited the AISC code in support of its conclusion that Lemartec assumed the cost overruns after it "implemented a fast-track project delivery methodology." D. Ct. Order of May 21, 2018, at 5. The determination that the AISC code explained or supplemented the purchase order as a usage of trade is not clearly erroneous, and we conclude that the court did not err in applying it to the facts of this case. Cf. Lesch v. United States, 612 F.3d 975, 981 (8th Cir. 2010) (explaining that a district court's decision following a bench trial must "set forth its reasoning with enough clarity that the appellate court may understand the basis of the decision" (quoting Leonard v. Dorsey & Whitney LLP, 553 F.3d 609, 613 (8th Cir. 2009))).

The judgment is affirmed.

_____

-7-