# United States Court of Appeals
## For the Eighth Circuit

———————————————

Nos. 20-2833/20-2898

———————————————

Agrifund, LLC

*Appellee/Cross-Appellant*

v.

Heartland Co-op

*Appellant/Cross-Appellee*

———————————————

Appeal from United States District Court
for the Southern District of Iowa - Central

————————

Submitted: April 15, 2021
Filed: August 5, 2021

————————

Before KELLY, GRASZ, and KOBES, Circuit Judges.

————————

GRASZ, Circuit Judge.

Heartland Co-op ("Heartland") appeals the district court's[1] order granting summary judgment to Agrifund, LLC ("Agrifund"), on the conversion claim Agrifund brought against Heartland. Agrifund cross-appeals the district court's

———————————————

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

refusal to award attorney fees and damages at the interest rate listed in the contract. We affirm.

## I. Background

Heartland is a cooperative that sells supplies and provides financing to farmers through Heartland Credit Company, LLC, an affiliated entity under common ownership, control, and management. Anthony Wayne Salter and Mary Frances Salter (the "Salters") own a large row crop farming operation in Iowa and Nebraska.

Agrifund also provides financing to farmers. Agrifund provided funding to the Salters through a demand promissory note for $4,195,612.00 (the "Note"). Agrifund and the Salters signed an agricultural security agreement that provided Agrifund with a lien over all of the Salters' crops and assets for 2017. Agrifund perfected its lien under the Note shortly after the Note's execution by filing a Financing Statement with the Office of the Iowa Secretary of State.

Heartland also provided financing to the Salters in the amount of $150,000.00, which was later increased to $500,000.00. Heartland also perfected its lien by filing a Financing Statement with the Iowa Secretary of State. Shortly after the execution of the Note, Agrifund sent a notice to Heartland (and other potential crop purchasers) disclosing its lien over the Salters' assets and stating that any proceeds from the Salters' sale of crops should be sent to Agrifund. Heartland and Agrifund entered into a loan subordination agreement (the "Subordination Agreement") in which Heartland agreed to subordinate its loan to Agrifund's loan, which gave Agrifund first priority to collect the Salters' assets up to a total of $4,410,780.00.

On November 21, 2017, the Salters' open account with Heartland had an open balance of $328,124.46. On that date, the Salters gave Heartland a check to pay the full balance. The check used to pay the Salters' balance with Heartland was derived from proceeds of the Salters' sale of crops to a purchaser unknown to Agrifund at the time. Heartland did not know where the source of the funds came from at the

time of the payment. Agrifund argues that Heartland's acceptance of the check constituted conversion of assets that belonged to Agrifund.

Agrifund sued Heartland, alleging conversion[2] and seeking remittance of the Salters' assets that were transferred to Heartland. The parties stipulated to the facts and submitted cross-motions for summary judgment. The district court granted Agrifund's motion for summary judgment and denied Heartland's "holder in due course" affirmative defense. The parties attempted and failed to negotiate damages and attorney fees pursuant to the district court's order. The district court entered an order granting Agrifund damages of $115,081.14 plus pre-judgment and post-judgment interest and costs.

## II. Discussion

Heartland appeals the district court's summary-judgment order denying its affirmative defense as a "holder in due course" of the Salters' assets; Agrifund cross-appeals the district court's damages award and denial of its attorney fees.

## A. Motion for Summary Judgment

We review the district court's grant of summary judgment de novo. *LM Ins. Corp. v. Dubuque Barge & Fleeting Serv. Co.*, 964 F.3d 1247, 1249 (8th Cir. 2020). Summary judgment is appropriate "when . . . there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." *Bruhn Farms Joint Venture v. Fireman's Fund Ins.*, 823 F.3d 1161, 1165 (8th Cir. 2016). The parties stipulated that there are no disputed facts in this case. This case concerns secured transactions, and the parties agree Iowa's version of the Uniform Commercial Code—Secured Transactions applies. *See* Iowa Code § 554.9101.

---

[2]Agrifund also alleged breach of contract and unjust enrichment. These claims were never decided by the district court and are not at issue on appeal.

# 1. Holder in Due Course

Under Iowa law, "[c]onversion is wrongful control or dominion over another's property contrary to that person's possessory right to the property." *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 593 (Iowa 1999). On appeal, Heartland does not argue that it did not convert Agrifund's property. The crux of its argument is that its status as a holder in due course absolves it of liability for the conversion.

The status of holder in due course is an affirmative defense to conversion. *Waukon Auto Supply v. Farmers & Merchants Sav. Bank,* 440 N.W.2d 844, 846 (Iowa 1989). "[A] holder in due course takes a negotiable instrument free of any claim to the instrument, including claims of prior secured parties." *Agriliance, L.L.C. v. Farmpro Servs., Inc.*, 328 F. Supp. 2d 958, 969 (S.D. Iowa 2003) (alteration in original) (quoting *Agriliance, L.L.C. v Runnells Grain Elevator, Inc.*, 272 F. Supp. 2d 800, 810 (S.D. Iowa 2003)); *see* Iowa Code § 554.3306. "To qualify as [a] holder[] in due course, the instrument must have been taken 'a) for value, b) in good faith, and c) without notice that the instrument is overdue or has been dishonored,' or of any contrary claim to rights in the instrument, and without notice that any party has a defense or claim in recoupment." *Farmpro*, 328 F. Supp. 2d at 969 (cleaned up) (quoting same).

"[G]ood faith under Iowa law is subjective, [but] the test for notice has an objective component." *Id*. at 970. "Whether the junior secured party qualifies as a holder in due course is fact-sensitive and should be decided on a case-by-case basis in the light of those circumstances." Iowa Code § 554.9331, cmt. 5.

Heartland bears the burden of establishing each of the required elements for this affirmative defense, but the parties stipulate that Heartland took the Salters' payment "for value." Thus, the only issues to address are the good faith and notice elements.

## 2. Notice

Heartland correctly argues that the good faith and notice elements of the holder-in-due-course test merge into a single constructive notice inquiry. *Farmpro*, 328 F. Supp. 2d at 970. Thus, the only issue before the court is whether Heartland abided by reasonable commercial standards of fair dealing.

"[A] person has notice when he has received a notification of the fact in question." Iowa Code § 554.1201, cmt. 25. "Under Iowa law, a court must determine whether the holder's actual knowledge is, under the circumstances, sufficient to allow the holder to 'reasonably infer the probable existence of the claim.'" *Runnells*, 272 F. Supp. 2d at 813 (quoting *Valley Nat'l Bank v. Porter*, 705 F.2d 1027, 1029 (8th Cir. 1983)). "In Iowa, knowledge of unscrupulous behavior has been enough to impose a duty to inquire." *Farmpro*, 328 F. Supp. 2d at 972.

Whether Heartland had notice of Agrifund's claim to the Salters' assets under Iowa law is a close call. On the one hand, Heartland did not participate in the transaction in which the Salters sold their crops in violation of the Note, and Heartland had no knowledge of that transaction before accepting payment. On the other hand, the Salters' payment was for the full outstanding debt due to Heartland, rather than a smaller, more typical monthly payment. And, it is undisputed that Agrifund sent a notice to Heartland about its interest in the Salters' assets and told Heartland to remit payment for the Salters' crops directly to Agrifund.

Heartland argues that it observed reasonable commercial standards of fair dealing because the timing and amount of the Salters' payment was not abnormal considering the information Heartland possessed about the Salters based on Heartland's role as a lender. We are unconvinced that Iowa law would recognize such an excuse. Even if the Salters' behavior was consistent with their previous payment history, Heartland was aware, through the Subrogation Agreement, of Agrifund's superior lien against the Salters' assets. It would have taken minimal effort for Heartland to confirm, whether with the Salters or with Agrifund, that

Agrifund had been fully recompensed before accepting the payment at issue. We thus conclude that Heartland did not accept the Salters' payment without notice. Heartland failed to exercise reasonable commercial standards of fair dealing, and Heartland does not qualify as a holder in due course.

## B. Damages

Agrifund argues that the district court erred in only awarding the principal amount of damages with the statutory rate of interest, as opposed to the higher contractual rate of interest. Agrifund also argues the contract entitled it to recover attorney fees, which the district court denied.

We review a trial court's decision on damages for abuse of discretion. *Williams v. Hobbs*, 662 F.3d 994, 1011 (8th Cir. 2011). "The general rule is that the measure of damages for conversion is the fair and reasonable market value of the property at the time of the taking." *Murray v. Conrad*, 346 N.W.2d 814, 821 (Iowa 1984). "Conversion damages are intended to compensate the wronged party for a loss sustained because property was wrongfully taken. Thus, the primary principle to be applied in awarding damages for loss of property through conversion is that the owner should be compensated for the actual loss sustained." *Becker v. Longinaker*, 784 N.W.2d 202, No. 09-0833, 2010 WL 1578400, at *8 (Iowa Ct. App. April 21, 2010) (unpublished table opinion) (quoting 18 Am.Jur.2d Conversion § 116, at 225 (2004)). "However, in conversion cases, the reasonable and necessary expenses incurred in recovering the property are a proper element of damage." *State v. Taylor*, 506 N.W.2d 767, 768 (Iowa 1993).

## 1. Note/Subrogation Issue

Agrifund argues that the parties' Subrogation Agreement incorporates the terms of the Note, and the Note contains a provision entitling Agrifund to recover "all expenses of collection, enforcement or protection" of Agrifund's rights under the Note. We disagree.

"Iowa courts 'generally review the construction and interpretation of a contract as a matter of law.'" *Acciona Windpower N. Am., LLC v. City of W. Branch*, 847 F.3d 963, 966 (8th Cir. 2017) (quoting *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999)). "Under Iowa law, a key rule of contract interpretation is that courts 'give effect to the language of the entire contract according to its commonly accepted and ordinary meaning.'" *Id.* at 967 (quoting same). "The cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract." *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008). "[W]herever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade." *Id.* (quoting Restatement (Second) of Contracts § 202(5) (1979)). Although Iowa law allows "extrinsic evidence to aid in the process of interpretation, the words of the agreement are still the most important evidence of the party's intentions at the time they entered into the contract." *Id.*

In support of its argument, Agrifund points to the portion of the Subordination Agreement that states Heartland "agrees to hold in trust and to pay to [Agrifund] all the proceeds derived as a result of any foreclosure by [Heartland] on the Collateral which is equal to the total amount of the obligations of the [Salters] secured under the terms of the [Note.]"

Separately, the Subordination Agreement states:

> This Agreement is EXPRESSLY CONDITIONED on [the Salters] delivering to [Heartland] good and collected funds (in US Dollars) to pay all outstanding principal and accrued interest pursuant to the Promissory Note between [the Salters] and [Heartland] for the 2016 crop year, dated April 26, 2016 in an original principal amount of $250,000.00. Until this requirement is satisfied, this Agreement shall not have any affect or validity.

After reviewing the plain terms of the Subrogation Agreement, we conclude that the Subrogation Agreement does not incorporate the terms of the Note. At most, the terms of the Subrogation Agreement outline the amount of Agrifund's lien and the amount due by the Salters, but the terms do not expressly or implicitly connect Heartland's obligations under the Subordination Agreement to the Salters' obligations under the Note. Heartland agreeing to remit payment under the Subordination Agreement does not bind it to the terms of the Note. Heartland was not party to the Note and, without more, cannot be bound to it. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").

The district court awarded Agrifund $115,081.14 in damages plus pre-judgment interest, at the Iowa statutory rate, *see* Iowa Code §§ 535.3 and 668.13, and post-judgment interest, at the federal rate, *see* 28 U.S.C. § 1961. The district court understood both parties to mean the damages would be limited to the principal balance remaining on the Salters' note plus statutory pre-judgment and post-judgment interest. Thus, we conclude that the Subrogation Agreement did not bind Heartland to the terms of the Note. The 14% contractual interest rate does not apply to the damages award, and the district court properly awarded pre-judgment interest at the rate required by Iowa law and post-judgment interest at the federal rate.

### 2. Attorney Fees

Agrifund argues that the Note and Subrogation Agreement entitle it to recover its reasonable attorney fees. We review the district court's decision to deny attorney fees for abuse of discretion. *See Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 911 (8th Cir. 2015). "Generally, a party has no claim for attorney fees as damages in the absence of a statutory or written contractual provision allowing such an award." *Becker*, 2010 WL 1578400, at *14 (quoting *Williams v. Van Sickel*, 659 N.W.2d 572, 579 (Iowa 2003)); *NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 469 (Iowa 2010) ("As a general rule, unless authorized by statute or contract, an award of attorney fees is not allowed."). As mentioned, the terms of the

Subrogation Agreement do not bind Heartland to the terms of the Note. Therefore, Heartland is not liable for attorney fees as set forth in the Note, and we hold there is no abuse of discretion in the district court's decision to deny Agrifund's request for attorney fees.

### III. Conclusion

We affirm the district court's order granting summary judgment in favor of Agrifund and affirm the district court's award of damages.

_____